UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

United States of America,

    Plaintiff,

v.                                Case No.: 8:07-cr-00046-T-27MSS

Clifford Darden,

    Defendant.

                             /

MAR 10 2025 PM 12:35
FILED - USDC - FLMD - TPA

MOTION FOR REDUCTION IN SENTENCE [1]
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)

Clifford darden, proceeding pro se, respectfully requests a reduction in sentence (hereinafter "RIS") pursuant to 18 U.S.C. § 3582(c)(1)(A).

I.   Backgroud

In 2007, Darden and a co-defendant robbed 2 convenience stores in the Tampa Bay area. For sake of brevity, Darden refers this court and the United States to United States v. Darden, 708 F.3d 1225, 1226-27 (11th Cir. 2013). This court ultimately sentence Darden to a term of 34 years imprisonment on 18 U.S.C. § 1951 & 2, and two counts of 18 U.S.C. § 924(c), stacked.

Darden subsequently filed a 28 U.S.C. § 2255 Motion to Vacate, which was denied. See Darden v. United States, 2010 U.S. Dist. LEXIS 91869 (M.D. Fla. 2010), However, the Eleventh Circuit Court of Appeals granted a Certificate of Appealability on one of Darden's ineffective assistance of counsel claims, but nevertheless, the Eleventh Circuit affirmed Darden's sentence and conviciton. Darden, 708 F.3d at 1226.

---

[1] Darden styles this motion as a "reduction in sentence," as the text of § 3582(c)(1)(A) does not mention "compassionate release." Instead, it only mentions that "the court ... may reduce the term of imprisonment." Id.

## II. Statutory Authority

"[T]he First Step Act of 2018 amended [§]3582(c)(1)(A) by adding a provision that allows prisoners to directly petition a district court" for a reduction in sentence." United States v. Archer, 2021 U.S. Dist. LEXIS 210158 *5 (M.D. Fla. 2021). And this amended statute expanded the circumstances, as the Sentencing Commission also reflects. See United States v. Hilliard, 2024 U.S. Dist. LEXIS 109605 *4-5 (E.D. Wis. 2024)(the "November 1, 2023 amendments to § 1B1.13 ... expand the list of specified extraordinary and compelling reasons that can warrant sentence reductions.").

## III. Extraordinary and Compelling Reasons

"A court may reduce a term of imprisonment upon finding extraordinary and compelling circumstances, consistent with applicable policy statements of the Sentencing Commission." United States v. Pemberton, 2020 U.S. Dist. LEXIS 111121 * 3-4 (M.D. Fla. 2020)(Covington, J.)(quoting 18 U.S.C. § 3582(c)(1)(A)(internal quotations omitted)). And, Darden understands that he, as the moving party, bears the burden of proving each and every such extraordinary and compelling reason for RIS. See United States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013).

In support of his Motion for RIS, Darden presents two extraordinary reasons for consideration: 1) § 1B1.13(b)(2)'s "Age of the Defendant" provision; and (b)(6)'s Unusually Long Sentence. Darden addresses each of these reasons in turn below.

### A. (b)(2) - Age of the Defendant

Darden understands that in order to claim a (b)(2) justification for extraordinary and compelling reasons, he must satisfy three criteria:

(A) Defendant must be at least 65 years old;
(B) Defendant must be currently experiencing a serious deterioration in physical ... health because of the aging process; and
(C) Defendant has served at least 10 years ... of his [] term of imprisonment.

U.S.S.G. § 1B1.13(b)(2); see also United States v. Morgan, 2024 U.S. Dist. LEXIS 48936 * 5 (M.D. Fla. 2024)(Barber, J.).

It is undisputed that Darden satisfies the first and third prongs of (b)(2)'s requirements. Darden is 65 years old: his birthdate is November 3, 1959. See, e.g., Appendix of Clifford Darden (hereinafter "App.") at 4 ("Darden, Clifford ... DOB 11/3/1959"); id. at 51 (BOP Computation Data Sheet)("Date of Birth: 11-03-1959, Age: 65."). Moreover, as Darden was sentenced in 2008, see id. ("Date sentenced ... 10-08-2008"), Darden has served well over 10 years./2

Having dispensed with the obvious, Darden provides comprehensive edivence to demonstrate that he is "experiencing a serious deterioration in physical ... health." U.S.S.G. § 1B1.13(b)(2).

### 1. Serious Deterioration

The Eleventh Circuit defines "[a] serious deterioration [to] require[] deterioration beyond what is normal to many individuals as part of the aging process." United States v. Garner, 2024 U.S. Dist. LEXIS 115378 n.2 (S.D. Ala. 2024)(quoting United States v. Ramirez, 2021 U.S. App. LEXIS 33431 (11th Cir. 2021)(unpublished).

Put differently, deterioration "cannot simply be inferred from the defendant's age." United States v. Aird, 2024 U.S. Dist. LEXIS 73538 *7-8 (S.D. Ala. 2024)(citing United States v. Monaco, 832 Fed. Appx. 626, 630 (11th Cir. 2020); see also Aird, 2024 U.S. Dist. LEXIS 73578 at *7 (dyslipidemia, cataracts, and carpal tunnel syndrome found to be "unremarkable medical conditions for (b)(2) purposes") and United States v. Readon, 2024 U.S. Dist. LEXIS 100871 *12-13 (S.D. Fla. 2024)(hernia, back pain, depression, anxiety, and bi-polar disorders "do[] not appear to be a [] serious deterioration in physical or mental health because of the aging process.") (emphasis in original).

This is not what Darden has. Darden's conditions are severe and life-threatening. A sampling of the current, unresolved conditions Darden suffers from include, but are not limited to: atrial fibrilation, congestive heart failure, obesity, Type

---

2/ While not necessary for this analysis, Darden notes for this court that he has served over 50% of his s sentence. Id. ("Percent of statutory term served: 57.8%").

II Diabetes, hypertension, and LTBI Prophy. See App. 25-26 (Current Medical Problems). In addition, Darden suffers from acute kidney injury with a history of kidney disease (App. 2); hyperlipidimia and renal failure (App. 3); hypoglycemia[3] (App. 4); "very high creatinine" levels (App. 6); and many other conditions. See generally App. 25-26.

Indeed, many other courts—including courts in this district—have released similarly situated defendants for conditions comparable to Darden's. Compare App. 4-50 with United States v. Pray, 2024 U.S. Dist. LEXIS 176962 (D.N.J. 2024)(arthritis, detached retina, and kidney disease "with progressive renal insufficiency," pre-diabetes and hypertension satisfied (b)(2) requirements) and United States v. Brown, 2024 U.S. Dist. LEXIS 222869 (D. Md. 2024)(high blood pressure, coronary artery disease, atrial fibrilation, Type II Diabetes, and obesity met (b)(2) requirements) and United States v. Trucchio, 2024 U.S. Dist. LEXIS 212632 *18-19 (M.D. Fla. 2024)(Honeywell, J.)(life sentence reduced to time served for defendant who had "degenerative joint disease", high creatinine levels "indicative of liver disease" and high blood pressure under (b)(2)(B)."); and United States v. Franklin, 2024 U.S. Dist. LEIXS 176168 (S.D. Fla. 2024)(same).

"Prisons are unhealthy places for anyone of any age, but keeping older adults locked up is particularly dangerous." Prison Policy, August 2, 2023, available at: https://www.prisonpolicy.org/blog/2023/08/02/aging. Moreover, "incarceration itself accelerates aging: people face more chronic and life-threatening illness earlier than we would expect outside of prison." Id. Given how Darden used to be a world-class athlete, see United States v. Darden, 708 F.3d 1225, 1226 (11th Cir. 2013)(Darden was "a former professional basketball player"), the relief is even more stark. See App. 84 (letter from Darden to court).

---

3/ Darden was hospitalized, in part, due to this fact. App. 2 (Darden "was in the bathroom and then all of [a] sudden felt weak and passed out ... [Darden] was found down and blood glucose [level] was 54 at that time.").

In sum, Darden believes he meets (b)(2)'s criteria, especially given how "progressive heart failure is a serious illness 'with an end of life trajectory' even if there is no 'specific prognosis of life expectancy' (which the policy statement does not require)." United States v. Creamer, 2022 U.S. Dist. LEXIS 11629 *7 (M.D. Fla. 202)(Corrigan, J.)(quoting U.S.S.G. § 1B1.13, cmt. 1(A)(i)).

### B. Sentencing Disparity has Created an Unusually Long Sentence

As mentioned above, this court sentenced Darden to a 34-year term of imprisonment based on Hobbs Act robberies and 18 U.S.C. § 924(c) offenses. See App. 51-52. This court stacked the § 924(c) charges; seven years for the first offense, and 25 years for the second.

Darden argues that his sentence is unusually long due to this sentencing disparity, as the First Step Act eliminated the stacking provision to § 924(c), and thus, eliminated the heretofore required 25-year minimum mandatories. While the FSA did not make this change in the law retroactive, it amounts to a gross disparity when compared to the length of sentence Darden would receive were he sentenced today. In other words, Darden would have received only a 9-year sentence were he sentenced under today's laws—not 34.

This draconian sentence results in an extraordinary and compelling reason for this court to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13(b)(6), as well as any other reasons this court may deem appropriate in reducing Darden's sentence. And although FSA did not make the changes to § 924(c) retroactive, (b)(6) does give this court discretion to consider Darden's situation and reduce his sentence, as it a gross disparity compared to what he would receive were he sentenced today.

As the law has changed, therefore, U.S.S.G. § 1B1.13(b)(6)(C), along with this court's discretion, permit it to reduce Darden's sentence. Further, this court has discretion to reduce Darden's sentence pursuant to § 1B1.13(b)(6)(E), as the Guide-

-5-

lines with regards to U.S.S.G. § 1B1.13(b)(5), (b)(6), (b)(6)(C), and (b)(6)(E) allow this honorable court to exercise its discretion, and reduce Darden's sentence.

Darden has currently a very harsh sentence for the stacking of two § 924(c)(1)(A)(i) offenses for which Darden was given an extra 25 years, prior to the enactment of the First Step Act. Section 403 of the First Step Act provides that the amended section 924(c) statute applies to any offense that was committed before the date of enactment of this Act. However, if the district court deems it appropriate to use its discretion under § 1B1.13(b)(5), (b)(6), (b)(6)(C), or (b)(6)(E), and permit a reduction in a defendant's sentence, the district court may do so. See, e.g., United States v. Ware, 720 F. Supp. 3d 1351 (N.D. Ga. 2024) *2; United States v. Hewlett, 2020 U.S. Dist. LEXIS 234395 *6 (N.D. Ala. 2020); see also United States v. Nesbitt, 2021 U.S. App. LEXIS 31949 *2 (11th Cir. 2021).

Darden has already served well over half of his sentence. See n.2 supra. In contrast, were Darden sentenced today, he would receive a sentence of 9 years. In other words, sentenced today, Darden would have already completed his term of imprisonment. See United States v. Bryant, 996 F.3d 1243, 1262 (11th Cir. 2021); United States v. Van Holten, 2023 U.S. Dist. LEXIS 213764 (M.D. Fla. 2023); and United States v. Padgett, 713 F. Supp. 3d 1223 (N.D. Fla. 2024).

There is a clear disparity between Darden's sentence and the one he would receive today, given the changes in the law. Darden's original sentence, after the passage of the First Step Act, expressly prohibits the stacking of 924(c) charges arising from the same crime. Hewlett, 2020 U.S. Dist. LEXIS 234395 at *6; see also Nesbitt; and see U.S.S.G. § 1B1.13(b)(5) and (b)(6).

In addition to the medical conditions listed in § III-A supra, Darden respectfully requests that this court consider his stacking claim as an additional extraodinary and compelling reasons to warrant a reduction of his sentence.

-6-

## IV. 18 U.S.C. § 3553(a) Factors

After exhaustion and the establishment of extraordinary and compelling reasons, this court must review the 3553(a) factors, which include, inter alia, the following:

the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence, and protect the public; (18 U.S.C. § 3553(a)(2))

the nature and circumstances of the offense and the history and characteristics of the defendant; (18 U.S.C. § 3553(a)(1))

the sentencing range established by the sentencing guidelines; (18 U.S.C. § 3553(a)(4)(A))

and the need to avoid unwanted sentencing disparities. (18 U.S.C. § 3553(a)(6)). United States v. Trucchio, 2024 U.S. Dist. LEXIS 212632 *23 (M.D. Fla. 2024) (Honeywell, J.)(quoting portions of 18 U.S.C. § 3553(a), listed supra)).

Darden will briefly address each of the 3553(a) factors as this court laid out in the Trucchio opinion listed supra:

### A. (a)(2)

First, Darden has taken full responsibility for his actions, and has stated so in his letter to the court. See App. 84. Here, Darden recognizes that he has "made some terrible choices." Id. He also has come to grips with the fact that "[t]he two robberies [he] committed impacted many in the Tampa area, especially [his] victims." Id. And although this court did sentence Darden to a 34-year sentence, the Honorable William J. Castagna was bound by the stacking rules. And at sentencing, Hon. Castagna made no mention of his desire for Darden to serve a de facto life sentence; rather, he only requested that he take Anger Management, which he took in 2019. App. 58 (Darden took "Cage Your Rage" class for Anger Management ). As such, Darden believes that the 16 years he has served thus far adequately satisfy this factor.

### B. (a)(1)

The nature and circumstances of Darden's crime stem from a downward spiral which took place immediately after the death of both of his parents. See PSR. And although the armed bank robberies were serious, no deaths occurred, and Darden has long since repaid any restitution he originally owed. App. 59 ("FRP Payment Plan ... FRP

-7-

Assignment: NO OBLG [Obligation] ... FINANC[IAL] RESP[onsibility] - NO.").

In addition to this, Darden has been progressing positively since his incarceration. Darden is a siginificantly changed individual from the one he was in 2008. Daeden has not received a single incident report in over 10 years. App. 54. Also, Darden has been taking advantage of many of the rehabilitative programs available to him over the years. App. 58-59 (Program Review); see also App. 60-80 (Program Certificates). Darden has even received glowing letters of support from staff members. App. 81-83. Specifically, Darden's Factory Foreman, Ofc. G. Walker, has said that Darden "show[s] tremendous work ethic[s] and professionalism," and that he "goes above the standard of what is expected as a worker." App. 83.

## C. (a)(4)(A)

Darden avers that, were the stacked 924(c) charge set aside, he would fall on the Guidelines sentencing table at approximately:

Base level -- 20
Enhancement for discharge -- 7
_____
Guidelines Level 27

Based on Darden's Criminal History, which is CHC IV, Darden's sentencing range would be 100 to 120 months, or nearly 70% less than the 408 months he has to endure today. See U.S.S.G. § 2B3.1.(November 1, 2024).

## D. (a)(6)

In order to avoid unwanted sentencing disparities, as 3553(a) requires, Darden presents several examples of similarly-situated defendants, and the sentenced they received, to give context to this factor.

### 1. Example One

In United States v. Welch, 2023 U.S. Dist. LEXIS 36400 (N.D.Ga. 2023), the defendant pleaded guilty to the same charges as Darden——one count of 1951(a) and brandishing 924(c). As a result, the defendant in Welch received a 108-month sentence, or 75% less than Darden's 408-month sentence.

### 2. Example Two

Next up is <u>Iacono v. United States</u>, 2021 U.S. Dist. LEXIS 12371 (S.D. Fla. 2021). In this case, the defendant was arrested and charged with robbing a local 7-11 at gunpoint. Ultimately, Iacono pleaded guilty, and was sentenced to 150 months imprisonment for the armed robbery charge (1951(a)), and for a 924(c) charge that included both brandishing and discharge. See <u>Iacono</u>, 2021 U.S. Dist. LEXIS 12371 at *2.

### 3. Example Three

Last, Darden mentions <u>Sejour v. United States</u>, 2020 U.S. Dist. LEIXS 23957 (S.D. Fla. 2020). Here, Sejour proceeded to trial on 1951(a) and 924(c) brandishing. And after trial, the sentencing court sentenced the defendant to <u>one day</u> for the armed robbery charge, and seven years for the 924(c) brandishing.

As Darden illustrates with the above examples, the mine-run case of armed robbery without a stacked 924(c) results in sentences that are as much as 85% shorter than the sentence Darden received. In light of this analysis, it is simply a gross disparity of sentencing, one that this court can easily correct by exercising its discretion.

## V. 18 U.S.C. § 3142(g)

The fourth and final prong this court must review prior to reaching its decision is to determine whether Darden presents a danger to the community under 18 U.S.C. § 3142(g). Darden surmises why he believes that, in his current condition, he presents no risk.

Returning to the <u>Pray</u> case, Darden compares the court's analysis in that case to the instant situation. For example, the defendant in <u>Pray</u> argued that his "long-standing good behavior, [] elder age, [] BOP custody classification, and PATTERN score" demonstrate that "he does not constitute a danger to the community." <u>Pray</u>, 2024 U.S. Dist. LEXIS 176962 at *27. And the government agreed. <u>Id.</u> As a result,

"the Court f[ound] that Mr. Pray is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Id.

Darden matches all of these criteria. He has not had a single disciplinary report in over 10 years. App. 54. He is elderly, at 65, with myriad health conditions. Darden has been at FCC Coleman Low for eight years—and that is the lowest level of security he can reach. Finally, Darden enjoys a Minimum PATTERN score of only 4 points. App. 54. In sum, Darden—like Pray—"is not a danger to the safety of any other person or to the community." 18 U.S.C. § 3142(g).

## VI. Conclusion

Wherefore Darden respectfully requests tat this court reduce his sentence to time served, with the proviso that it stay the order for 30 days in order for the BOP to have adequate time to effectuate the Release Plan Darden has on file with his Case Manager. And Darden further requests that this court grant him the appointment of counsel, as discussed in the attached motion.

Respectfully submitted/* by Clifford Darden on this 28 day of February, 2025:

                                                                Clifford Darden
                                                                Reg. No.: 49961-018
                                                                Federal Correctional Complex
                                                                Unit A-1 (Low Custody)
                                                                P.O. Box 1031
                                                                Coleman, FL 33521-1031

## CERTIFICATE OF SERVICE

This motion was delivered to the prison mailing authorities on the same day as signed, and placed inside a postage-prepaid, properly addressed envelope. THe original motion was delivered via United States First Class Mail to the United States District Court for the Middle District of Florida, Tampa Division, Office of the Clerk at 801 North Florida Avenue, Tampa, Florida, 33602. A copy of this motion was delivered via United States First Class Mail to counsel for the United States at 400 North Tampa Street, Suite 3200, Tampa, Florida, 33602.

                                                                Clifford Darden

## VERIFICATION

Under penalty of perjury pursuant to 28 U.S.C. § 1746, I hereby declare that the factual allegations and factual statements contained in this motion are true and correct to the best of my knowledge.

                                                                Clifford Darden

---

*/ Pursuant to Johnson v. Avery, 393 U.S. 483 (1969), I received assistance from a fellow inmate with the preparation and filing of this motion.